UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

DIGIBLAZE TECHNOLOGIES, INC.,

Plaintiff,

Civil No. 01-910 DWF/AJB

v.

**REPORT AND RECOMMENDATION**

COMPASS BANK,

Defendant.

Mark D. Wisser, ANTHONY OSTLUND & BAER, P.A., Minneapolis, Minnesota, on behalf of Plaintiff DigiBlaze Technologies, Inc.

David R. Crosby, LEONARD, STREET AND DEINARD, Minneapolis, Minnesota, on behalf of Defendant Compass Bank.

J. Russell Campell, BALCH & BINGHAM LLP, Birmingham, Alabama, on behalf of Defendant Compass Bank.

## I. INTRODUCTION

DigiBlaze Technologies, Inc. ("DigiBlaze") has brought this diversity action against Compass Bank ("Compass") alleging several counts, including conversion, fraud, unjust enrichment and tortious interference. Essentially, DigiBlaze alleges that Compass wrongfully "turned off" its account and "captured" about $900,000 belonging to DigiBlaze. There is no apparent dispute that this Court has jurisdiction under to 28 U.S.C. § 1332 and that venue is proper under 28 U.S.C. § 1391(a)(2). This case is now before the Court on Compass's motion to dismiss for lack of personal jurisdiction. As an alternative remedy, Compass asks the Court to transfer the case to the Northern District of Alabama, pursuant to 28 U.S.C. § 1404(a). The

FILED NOV 21 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

matter is properly before the undersigned United States Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. For reasons discussed below, it is recommended that the motion to dismiss for lack of personal jurisdiction be denied and that the motion to transfer be granted.

## II. BACKGROUND

The following background information is taken from the Complaint, unless otherwise noted. Compass is an Alabama banking corporation with its principal place of business in Alabama. Compass processes credit card transactions for merchants. (Slimick Aff. at ¶ 5). Compass describes its business as follows:

> Compass, like many other banks, has an existing relationship with VISA and MasterCard such that these networks accept credit card transactions from Compass and route the transactions to a cardholder's issuer (such as another bank). Payment is then made to Compass in Alabama, and ultimately (if certain conditions are met), payment is sent from Alabama into the account of the merchant entities.

Id. at ¶ 9. According to Compass, there are high-risk merchants–such as telemarketers and adult entertainment businesses–which tend to expose Compass to losses. Id. at 13.

Until his termination in February 2001, John Harper ("Harper") managed merchant accounts for Compass's credit card processing section. As discussed below, Harper is now being sued by Compass in the Northern District of Alabama. (Slimick Aff., Ex. D). In that suit, Compass alleges that Harper was part of an overall conspiracy, the purpose of which was to deceive Compass as to the true risk of doing business with certain merchants. Id. at ¶ 30.

Compass enters into contracts with independent sales organizations ("ISOs") which market Compass's processing services. (Slimick Aff. at ¶ 14). Compass entered into such an

arrangement with William Powell, who does business as Allied e-Commerce Solutions, Inc. (hereafter "Powell"). Id. at ¶ 15. The contract between Compass and Powell reads in part:

> [Compass] desires to contract with [Powell] to engage in independent marketing of merchant bank card processing services for [Compass] and [Powell] herein agrees to act in such capacity throughout the USA.

(Slimick Aff., Ex. B at 1). As discussed below, Powell is now being sued by Compass in the Northern District of Alabama. (Slimick Aff., Ex. D). In that suit, Compass alleges that Powell was part of the above-mentioned conspiracy. Id. at ¶ 30.

DigiBlaze, a Minnesota corporation, was in the business of processing Internet credit card transactions. Louis Dachis ("Dachis") is the president and sole shareholder of DigiBlaze. (Dachis Aff. at ¶ 1). In the fall of 2000, DigiBlaze was introduced to Powell, who represented that he could arrange a merchant banking relationship between Compass and DigiBlaze. Powell provided an application, which DigiBlaze completed and returned. Compass approved the application and DigiBlaze began transmitting credit card transactions by the end of October 2000. In January 2001, Compass shut down DigiBlaze's account. After some negotiations, Compass agreed to reopen the account, but in February the account was shut down again.

On May 24, 2001, DigiBlaze filed this suit against Compass, alleging several counts, including conversion, fraud, unjust enrichment and tortious interference. Essentially, DigiBlaze alleges that Compass wrongfully "turned off" its account and "captured" about $900,000 belonging to DigiBlaze.

## III. DISCUSSION

As noted above, Compass is now before the Court on Compass's motion to dismiss for lack of personal jurisdiction. As an alternative remedy, Compass asks the Court to transfer the

case to the Northern District of Alabama, pursuant to 28 U.S.C. § 1404(a).

## A. PERSONAL JURISDICTION

To overcome a pretrial motion to dismiss for lack of personal jurisdiction, the nonmoving party must make only a *prima facie* showing of personal jurisdiction. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). "[A]t the pretrial stage, all evidence must be viewed in the light most favorable to the plaintiff and all factual disputes must be resolved in the plaintiff's favor. Doubts as to whether a court has personal jurisdiction over an individual or entity should be resolved in favor of retaining jurisdiction." Tuttle v. Lorillard Tobacco Co., 118 F.Supp.2d 954, 958 (D. Minn. 2000) (citation omitted).

FED. R. CIV. P. 4(k)(1)(A) provides that "[s]ervice of a summons . . . is effective to establish jurisdiction over the person of a defendant who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located . . . ." The Minnesota long-arm statute authorizes jurisdiction to the extent permitted by due process. Guinness Import Co. v. Mark VII Distrib., Inc., 153 F.3d 607, 614 (8th Cir. 1998). Therefore, to determine if Compass could be subjected to the jurisdiction of a Minnesota court of general jurisdiction, the Court must determine if doing so would be consistent with due process. After reviewing Plaintiff's complaint and affidavits–and upon taking the assertions therein as true–the Court concludes that Plaintiff has made a *prima facie* showing of personal jurisdiction.

Specific jurisdiction is established when a "defendant has purposely directed its activities at forum residents, and the litigation results from injuries arising out of or relating to those activities." Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1103 (8th Cir. 1996). This litigation results from alleged injuries arising out of and relating to Powell's activities,

which were directed towards DigiBlaze, a Minnesota corporation. Powell came into contact with DigiBlaze, accepted DigiBlaze's application and turned it over to Compass, who in turn established an ongoing contractual relationship with DigiBlaze.

The narrow issue is whether Powell's activities should be fairly attributable to Compass. The Court concludes that they should. Although Powell's activities may not be attributable to Compass in a strict "employer-employee" sense, those activities are attributable to Compass for purposes of establishing personal jurisdiction. Consider the contract language:

> [Compass] desires to contract with [Powell] to engage in independent marketing of merchant bank card processing services for [Compass] and [Powell] herein agrees to act in such capacity throughout the USA.

(Slimick Aff., Ex. B at 1). There can be no doubt that Compass played an active role in setting up a system whereby Powell would generate business for Compass "throughout the USA." Compass cannot now disclaim that system after setting it up and reaping the benefits therefrom.

**B. TRANSFER**

On May 22, 2001, two days before this suit was filed, Compass filed suit in the Northern District of Alabama. (Slimick Aff., Ex. C). Compass named Powell, Harper, and a host of other persons and organizations as defendants (but not DigiBlaze or Dachis). Id. On May 31, 2001, about one week *after* this suit was filed, Compass added DigiBlaze and Dachis as defendants in the Alabama action. (Slimick Aff., Ex. D). As an alternative to dismissing this case, Compass asks the Court to transfer this case to the Northern District of Alabama, pursuant to 28 U.S.C. § 1404(a), so that it may be joined with the Alabama action.

As an initial matter, the Court concludes that this case and the Alabama action should be viewed as duplicative lawsuits. In addition, although the Alabama suit was filed first, it is

considered a second-filed suit for purposes of the instant motion, because DigiBlaze and Dachis were added to the Alabama suit *after* this suit was filed.

Where there is a duplicative, second-filed suit in another forum, the first-filed suit is generally preferred in a choice-of-venue decision. Northwest Airlines v. American Airlines, 989 F.2d 1002, 1005 (8th Cir. 1993). This rule, however, is not rigid, mechanical or inflexible, but should serve the interests of justice. Id.

Here, the Court concludes that DigiBlaze is not entitled to the benefits of the first-filed rule. Before filing this action, DigiBlaze was well-aware of the lawsuit pending in Alabama. In fact, DigiBlaze was subpoenaed. Although DigiBlaze suggests that, when this case was commenced, it did not expect to be a target of the Alabama litigation, it is hard to imagine that, upon learning of the Alabama lawsuit and upon being subpoenaed, DigiBlaze did not read the writing on the wall. Therefore, that this action was a preemptive strike to avoid litigation in Alabama is an inescapable conclusion. Because this case and the Alabama action will involve common issues, and because those issues would need to be addressed in the Alabama action regardless of this suit (e.g., the behavior of Powell and Harper), the interests of justice dictate that this case be transferred to Alabama. This will conserve judicial resources and avoid conflicting results.

## IV. RECOMMENDATION

For the foregoing reasons, it is hereby recommended that the motion to dismiss be denied and that the motion to transfer be granted.

Dated: 11/21/01

Arthur J. Boylan
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of the Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within 10 days.